UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ADRIANA G. KAM-O'DONOGHUE, as<br>Personal Representative of the<br>Estate of ALEXANDER CASTRO,<br>    Plaintiff,<br><br>        v.<br><br>JOHN TULLY and KEITH SALACH,<br>Individually and in their<br>Capacities as Lawrence Police<br>Officers, and the CITY OF<br>LAWRENCE, MASSACHUSETTS<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. 16-11054-MLW<br>)<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM AND ORDER

WOLF, D.J.                                September 10, 2019

I.   INTRODUCTION

In the early morning hours of June 15, 2013, officers John Tully and Keith Salach of the Lawrence, Massachusetts Police Department ("LPD") attempted to apprehend Alexander Castro for a noise violation and reckless driving. In the process, Castro's car and Tully's police cruiser collided, and Tully shot and injured Castro. Castro sued Tully and Salach, as well as the City of Lawrence ("the City"), for violating his rights under federal and state law.[1]

---

[1] Adriana Kam-O'Donoghue, personal representative of Castro's estate, maintains this suit on behalf of Castro, who died in July 2016 in an automobile accident unrelated to this case. See Notice of Death (Dkt. No. 23); Mot. Substitute Pl. (Dkt. No. 36).

The court referred this case to the Magistrate Judge for all pretrial purposes. Defendants moved for summary judgment. Castro cross-moved for summary judgment against the City, which the City moved to strike as untimely. In a Report and Recommendation, the Magistrate Judge recommends that the court allow in part and deny in part defendants' motions. In particular, characterizing it as a "close question," she finds triable facts as to whether Tully and Salach unreasonably seized Castro and engaged in an unlawful conspiracy to deprive Castro of his constitutional rights. She also finds that Tully and Salach waived their arguments for summary judgment on Castro's federal equal protection claims. Tully and Salach object to these findings. Castro did not object or respond to Tully and Salach's objections.

The court has reviewed de novo those parts of the Report and Recommendation to which Tully and Salach object. The court finds no triable issues of fact as to whether Tully and Salach unreasonably seized Castro or engaged in an unlawful conspiracy. The court also finds that Tully and Salach did not waive their arguments for summary judgment with respect to Castro's federal equal protection claims, and that there is no triable issue of fact as to whether Tully and Salach acted with discriminatory animus. Furthermore, although the city did not move for summary judgment on Castro's claim for negligent infliction of emotional distress ("NIED") and, therefore, the Magistrate Judge did not

address it, the court does not discern any triable issues of fact as to whether Tully acted negligently. However, the court is providing Castro an opportunity to attempt to identify evidence raising an issue of fact as to his NIED claim.

In other respects, the court finds that the Report and Recommendation is thorough, thoughtful, and persuasive. Accordingly, the court is adopting in part and modifying in part the Report and Recommendation. In summary, the court is allowing the City's Motion for Partial-Summary Judgment, and Tully's and Salach's motions for summary judgment. It is also allowing the City's Motion to Strike and, therefore, denying Castro's Cross-Motion for Summary Judgment.

II.   LEGAL STANDARDS

   A. Review of a Magistrate's Disposition

Federal Rule of Civil Procedure 72(b)(3) requires the court to review "de novo any part of the magistrate judge's disposition that has been properly objected to." "Conclusory objections that do not direct the reviewing court to the issues in controversy" are not proper under Rule 72(b). Velez-Padro v. Thermo King De P.R., Inc., 465 F.3d 31, 32 (1st Cir. 2006). Moreover, a party is "not entitled to a de novo review of an argument never raised" before the magistrate judge. Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987). "Parties must take before the magistrate, 'not only their "best shot" but all of their

3

shots.'" <u>Id.</u> (quoting <u>Singh v. Superintending Sch. Comm. of City of Portland</u>, 593 F. Supp. 1315, 1318 (D. Me. 1984)).

Where no objections have been filed to a report and recommendation, the court is not required to engage in <u>de novo</u> review, or even in "some lesser standard" of review. <u>Thomas v. Arn</u>, 474 U.S. 140, 149 (1985); <u>see also</u> 28 U.S.C. §636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). However, the court is encouraged "to afford some level of review to dispositive legal issues raised by the report." <u>Henderson v. Carlson</u>, 812 F.2d 874, 878 (3d Cir. 1987).

B. <u>Summary Judgment</u>

Federal Rule of Civil Procedure 56(a) provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A factual dispute, therefore, precludes summary judgment if it is "material" and "genuine." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

A fact is "material" if, in light of the relevant substantive law, "it has the potential of determining the outcome of the litigation." <u>Maymi v. P.R. Ports Auth.</u>, 515 F.3d 20, 25 (1st Cir. 2008). "Only disputes over facts that might affect the outcome of the suit under the governing law properly preclude the entry of summary judgment." <u>Anderson</u>, 477 U.S. at 248.

To determine if a factual dispute is "genuine," the court must assess whether "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Chadwick v. WellPoint, Inc., 561 F.3d 38, 43 (1st Cir. 2009) (quoting Anderson, 477 U.S. at 248). In making this determination, the court must "constru[e] the record in the light most favorable to the non-moving party." Douglas v. York Cty., 433 F.3d 143, 149 (1st Cir. 2005). The record should not, however, be scrutinized piecemeal; rather, it must be "taken as a whole." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Kelly v. Cort Furniture, 717 F. Supp. 2d 120, 122 (D. Mass. 2010). Evidence submitted in inadmissible form may be considered only if it could be presented in a form that would be admissible at trial. See Fed. R. Civ. P. 56(c)(2); Gorski v. N.H. Dep't Corr., 290 F.3d 466, 475-76 (1st Cir. 2002).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). However, the moving party's burden "may be discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325 (internal quotation marks omitted). Therefore, summary judgment is mandated "after adequate time for discovery

and upon motion, against a party who fails to make a showing
sufficient to establish the existence of an element essential to
that party's case, and on which that party will bear the burden of
proof at trial." Id. at 322.

III. FACTS

The court adopts the relevant facts recited in the Report and
Recommendation, as supplemented by the record. See R. & R. at 4-34
(Dkt. No. 83). The following facts are undisputed unless specified.

A. June 15, 2013

On June 15, 2013, LPD officers Tully and Salach were working
a shift from 1:00 a.m. to 9:00 a.m. They were in uniform and drove
separate police cruisers. At approximately 5:24 a.m., the officers
responded to a noise complaint about a loud party on Bennington
Street in Lawrence, Massachusetts. After resolving the noise
complaint, they departed Bennington Street and were driving on
Stearns Avenue.

While on Stearns Avenue, the officers heard the sound of a
revving car engine from Lawrence Street. Salach suspected that the
sound constituted a noise violation. As the officers turned onto
Lawrence Street, Salach observed a green Honda Civic revving its
engine and driving down Lawrence street towards the officers. The
driver of the car was Castro, a Hispanic male.

The officers activated their blue lights. Castro stopped in
front of Tully's and Salach's cruisers and then reversed at a high

6

rate of speed while weaving back and forth down Lawrence Street. Tully and Salach followed Castro down Lawrence Street, across two intersecting streets.

At some point, Tully's and Castro's vehicles collided. Castro asserts that Tully "rammed" his car, while Tully maintains that he attempted to push Castro back into his lane after Castro contacted Tully's cruiser. An accident reconstructionist concluded that "it is not possible to determine whether the Crown Victoria operated by Officer Tully made first contact with the 1995 Honda EX operated by [] Castro or whether the Honda swerved and made first contact with the Crown Victoria." Crashteams S. New Eng. Report at 12 (Dkt. No. 69-16). For the purposes of summary judgment, therefore, the court assumes that Tully rammed Castro's vehicle.

After Tully and Castro collided, their vehicles jumped a curb onto a traffic island on Bennington Street. Salach drove up next to Castro's vehicle, while Tully exited his cruiser and moved towards the back of Castro's car. Tully also drew his service weapon, placing his trigger finger alongside the trigger guard.

The parties dispute what happened next. Castro says that after coming to a stop on the traffic island, he drove forward.[2] See June

---

[2] Tully argues that Castro's testimony about driving forward is hearsay that does not fall under any hearsay exception. See Tully Objs. Pl. Facts at 21 (Dkt. No. 72). However, Castro's testimony falls under the exception for former testimony of an unavailable witness. See Fed. R. Evid. 804(b)(1). "Former testimony" is that which:

15, 2015 Trial Tr. at 82:15-17 (Dkt. No. 69-6). Tully and Salach

maintain that Castro reversed towards Tully. See Tully Dep. at

61:13-14 (Dkt. No. 69-3); Salach Dep. at 43:7-8 (Dkt. No. 69-17).

For the purposes of summary judgment, therefore, the court assumes

that Castro drove forward.

Tully then intentionally fired his weapon.[3] The bullet from

Tully's gun traveled through Castro's car and into Castro's back.

---

(A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and

(B) is now offered against a party who had--or, in a civil case, whose predecessor in interest had--an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

See id.

Castro's testimony meets the requirements of Rule 804(b)(1). Castro is dead and, therefore, unavailable. See id. 804(a)(4). His former testimony was given as a witness at trial. See id. 804(b)(1)(A). The trial was a criminal case against Castro arising from the same events that underlie this case, and the charges included, among other things, assault with a deadly weapon for allegedly reversing towards Tully. See June 15, 2015 Trial Tr. at 17:9-11 (Dkt. No. 69-5). Therefore, the state is Tully's "predecessor-in-interest."

Rule 804(b)(1)(B) does not require an identity or agency relationship between current and former parties. See Barraford v. T & N Ltd., 988 F. Supp. 2d 81, 85 (D. Mass. 2013). However, "where the parties in the two proceedings differ, there must be sufficient identity of issues to ensure that cross examination in the former case was directed to the issues presently relevant, and that the former parties were the same in motive and interest." Id. (internal quotation marks omitted). Here, the state shared with Tully a strong interest in demonstrating that Castro reversed towards Tully, rather than driving forward.

[3] Tully asserts that he accidentally fired his weapon when he slipped on the gravel on the traffic island. Indeed, he claims that he did not realize he fired his weapon until it was inspected

Castro proceeded to drive away. Tully and Salach pursued Castro, but eventually lost sight of him. They then returned to the scene of the collision on the traffic island. They reported the accident, and Tully picked up a piece of Castro's car to preserve as evidence. Neither officer took photos of the scene.

## B. LPD Policies

LPD has several policies relevant to this case. The LPD Manual of Procedure states that "it shall be the duty of every member of the Department to thoroughly familiarize himself with the provisions of the Rules and Regulations of the Department within 30 days after issuance of a copy of the rules." Dkt. No. 69-7 at 66.

Officers are authorized to use deadly force, which includes discharging a firearm, only "as a means of last resort to protect themselves and others from the immediate threat of death or serious physical injury." Id. at 12. Discharging a firearm at a "moving automobile is prohibited, unless there is imminent danger of death

---

later at the police station. However, several facts suggest that Tully intentionally discharged his firearm. In particular, Chief of Police James Fitzpatrick testified that he has never unknowingly discharged his weapon, see Fitzpatrick Dep. at 26:3-6 (Dkt. No. 69-1); Salach testified that he has never discharged his weapon accidentally, see Salach Dep. at 48:15-20 (Dkt. No. 69-17); and Tully testified that when he was behind Castro's vehicle and Castro's vehicle began to move, Tully "had every intention of firing at [Castro's] vehicle at that point," Tully Dep. at 78:21-22 (Dkt. No. 69-3). For the purposes of summary judgment, therefore, the court assumes that Tully intentionally fired his weapon.

or serious injury to the officer, and there are no means of escape." Dkt. No. 69-8 at 5. Whenever an officer discharges a firearm, he must submit a report of the circumstances "as soon as possible after the incident." Id. at 7.

LPD also maintains a policy on vehicular pursuits. A "pursuit" is "the active attempt by a police officer in an authorized emergency vehicle to apprehend the occupants of a moving motor vehicle whom [sic] are in the process of attempting to evade capture by traveling at speeds greater than the speed limit." Dkt. No. 69-7 at 28. An officer may only engage in a pursuit to apprehend persons wanted for felonious acts who have threatened or threaten the safety of others. The policy prohibits "the ramming of a suspect vehicle with a police cruiser." Id. at 32. Finally, if an officer engages in a pursuit, he must submit a report of the circumstances.

IV.   PROCEDURAL HISTORY

On September 21, 2016, the court referred this case to the Magistrate Judge for all pretrial purposes. See Dkt. No. 17. Shortly thereafter, Castro filed the Second Amended Complaint. See Dkt. No. 29. In ten counts he alleges that Tully, Salach, and the City violated his rights under federal and state law.

The Magistrate Judge set a deadline of October 20, 2017 for the parties to file dispositive motions. See Dkt. No. 57. Tully and Salach timely moved for summary judgment, see Dkt. Nos. 59,

61, and the City timely moved for partial summary judgment on Counts Seven and Ten, see Dkt. No. 63. On November 13, 2017, Castro cross-moved for summary judgment against the City for the alleged negligence of Tully, see Dkt. No. 68, which the City moved to strike as untimely, see Dkt. No. 73.

On March 29, 2018, the Magistrate Judge issued the Report and Recommendation. See Dkt. No. 83. She recommends allowing the City's Motion for Partial Summary Judgment and allowing in part and denying in part Tully's and Salach's motions for summary judgment. She also recommends allowing the City's Motion to Strike and, therefore, denying Castro's Motion for Cross-Summary Judgment.

Tully and Salach timely filed objections to the Report and Recommendation. See Dkt. No. 84. Castro and the City did not object. Nor did Castro respond to Tully and Salach's objections.

V.   ANALYSIS

A. Motion to Strike and Cross-Motion for Summary Judgment

As indicated earlier, the City moves to strike Castro's Cross-Motion for Summary Judgment, which he filed more than three weeks after the deadline for dispositive motions. See Dkt. No. 73. The Magistrate Judge recommends that the court allow the City's Motion to Strike and, therefore, deny Castro's Cross-Motion for Summary Judgment. See R. & R. at 97-99 (Dkt. No. 83). She notes that "Castro offer[ed] 'no compelling explanation for his delinquency,'" and that the First Circuit has recognized

11

"'preclusion of untimely summary judgment motions,'" as a "sanction[] for ignoring case management deadlines . . . ." Id. at 98-99 (quoting Rosario-Diaz v. Gonzalez, 140 F.3d 312, 315 (1st Cir. 1998)).

The court agrees that it is appropriate to strike the untimely Cross-Motion for Summary Judgment against the City for Tully's alleged negligence. However, the court has, in effect, decided such a motion would be unmeritorious in concluding that the City is entitled to summary judgment on all of Castro's claims.[4]

B. Counts Two, Three, Seven, Eight, Nine, and Ten

Castro does not object to the Magistrate Judge's recommendation that summary judgment be granted for defendants on Counts Two, Three, Seven, Eight, Nine, and Ten. Nevertheless, this court has reviewed her analysis, which is summarized below, and finds it persuasive. Therefore, the court is granting summary judgment on Counts Two, Three, Seven, Eight, Nine, and Ten.

Count Two alleges a civil conspiracy under Massachusetts law against Tully and Salach. More specifically, Castro alleges that Tully and Salach "conspired to unlawfully seize Castro, box

---

[4] The court is not now entering summary judgment on Castro's claim against the City for negligent infliction of emotional distress, on which the City inexplicably did not move for summary judgment. As explained below, it appears that such a motion would be meritorious. However, Castro is being provided an opportunity to attempt to identify evidence that puts in genuine dispute a material fact concerning that claim.

Castro's car in, ram Castro's car, force Castro's car off the road, and restrain his freedom of movement so Tully could shoot him." 2d Am. Compl. ¶169 (Dkt. No. 29). The Magistrate Judge recommends that the court allow Tully's and Salach's motions for summary judgment on Count Two. See R. & R. at 34-39 (Dkt. No. 83). She finds no triable issue of fact as to whether Tully and Salach engaged in "concerted action" or had a "common design or agreement." Id. at 38; see generally Gutierrez v. Mass. Bay Transp. Auth., 772 N.E.2d 552, 568 (Mass. 2002).

Count Three alleges intentional infliction of emotional distress ("IIED") against Tully. More specifically, Castro alleges that Tully shot him "because he was Hispanic," and that as a result he suffered severe emotional and physical distress. 2d Am. Compl. ¶179 (Dkt. No. 29). The Magistrate Judge recommends that the court allow Tully's Motion for Summary Judgment on Count Three. See R. & R. at 83-86 (Dkt. No. 83). She finds no triable issue of fact as to whether Tully's conduct was "extreme" or "outrageous," because he "discharged his weapon in the face of an imminent danger of death or serious injury . . . ." Id. at 85 (citing Robinson v. Cook, 706 F.3d 25, 38 (1st Cir. 2013)).

Count Seven alleges that the City is liable under 42 U.S.C. §1983 for Tully's and Salach's violations of Castro's constitutional rights. In particular, Castro alleges that the City failed to screen, train, supervise, and discipline Tully and

Salach. See 2d Am. Compl. ¶¶203-22 (Dkt. No. 29). The Magistrate Judge recommends that the court allow the City's Motion for Partial Summary Judgment on Count Seven. See R. & R. at 86-94 (Dkt. No. 83). She finds no triable issue of fact as to whether any City "custom" or "practice" caused a constitutional violation, or that the City acted with "deliberate indifference." Id.; see generally Monell v. Dept. of Soc. Servs. of City of N.Y., 436 U.S. 658 (1978); Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 26 (1st Cir. 2005).

Counts Eight and Nine allege that Tully and Salach violated Castro's rights under the Massachusetts Declaration of Rights and Equal Rights Amendment of the Constitution of the Commonwealth of Massachusetts. See 2d Am. Compl. ¶¶223-30 (Dkt. No. 29). As a threshold matter, the Magistrate Judge construes both counts as alleging violations of the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws ch. 12, §§11H, 11I. See R. & R. at 76-77 (Dkt. No. 83); see generally Thomas v. Town of Chelmsford, 267 F. Supp. 3d 279, 309 (D. Mass. 2017) ("[I]n most circumstances, plaintiffs may not bring direct claims under the state constitution but must instead bring a claim under [MCRA]."). She recommends that the court allow Tully's and Salach's motions for summary judgment on Counts Eight and Nine. In particular, she finds no triable issue of fact as to whether Tully or Salach deprived Castro of any rights by "threats, intimidation, or coercion" or treated

14

him differently because of his race. See R. & R. at 80 (Dkt. No. 83); see generally Orwat v. Maloney, 360 F. Supp. 2d 146, 164 (D. Mass. 2005) ("[Defendant's] purported use of excessive force . . . 'does not by itself involve threats, intimidation, or coercion and thus does not implicate the [MCRA].'") (quoting Longval v. Comm'r of Corr., 535 N.E.2d 588, 593 (Mass. 1989)).

Finally, Count Ten alleges that the City is liable under the Massachusetts Tort Claims Act ("MTCA"), Mass. Gen. Laws ch. 258, §2, for negligently training and supervising Tully. The Magistrate Judge recommends that the court allow the City's Motion for Partial Summary Judgment on Count Ten. See R. & R. at 94-97 (Dkt. No. 83). Even assuming that Tully and Salach acted negligently, she finds no causal link between their negligence and LPD training and supervision. See id.; see generally Kennedy v. Town of Billerica, 617 F.3d 520, 533 (1st Cir. 2010).

As indicated earlier, although there have been no objections to the foregoing findings and recommendations, the court has given "reasoned consideration" to them. See Henderson, 812 F.2d at 878. It finds each recommendation to be properly analyzed and persuasive. Therefore, the court is adopting the Report and Recommendation and allowing summary judgment for defendants on Counts Two, Four, Seven, Eight, Nine, and Ten.

C. Count Five: Fourth Amendment

Count Five alleges that Tully and Salach are liable under 42 U.S.C. §1983 for unreasonably seizing Castro. "A government official sued under §1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Carroll v. Carman, 135 S. Ct. 348, 350 (2014) (per curiam). Accordingly, "[q]ualified immunity protects government officials from trial and monetary liability unless the pleaded facts establish (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." Marreo-Mendez v. Calixto-Rodriquez, 830 F.3d 38, 43 (1st Cir. 2016) (internal quotation marks omitted). "If either of the two prongs is not met--i.e., if the facts do not show a constitutional violation or the right in question was not clearly established--the officer is immune." Id.

The Magistrate Judge recommends that the court find that the evidence, when viewed most favorably to Castro, would permit a reasonable jury to conclude that Tully used excessive force, but that Tully is nevertheless entitled to qualified immunity because he did not violate any clearly established federal right. Tully objects to the recommendation that a jury could find that he used excessive force. Castro has not objected to the recommendation that Tully is, in any event, protected by qualified immunity.

16

The court agrees with the Magistrate Judge that, at a minimum, Tully did not violate a clearly established federal right. Therefore, Tully has qualified immunity concerning Castro's excessive force. However, the court also finds that no reasonable jury would conclude that Tully used excessive force.

### 1. *No triable issue of fact exists as to whether Tully or Salach violated Castro's Fourth Amendment rights.*

To prove a Fourth Amendment violation, Castro must show that: (1) Tully or Salach seized him; and (2) the seizure was unreasonable. See Stamps v. Town of Framingham, 813 F.3d 27, 35 (1st Cir. 2016). The parties do not dispute that Tully and Salach seized Castro. Therefore, the court's focus is on whether a jury could find the seizure unreasonable.

"[T]he 'reasonableness' of a particular seizure depends not only on when it is made, but also on how it is carried out." Graham v. Connor, 490 U.S. 386, 395 (1989). This means that "[a] seizure may be unreasonable both because it was unjustified by the circumstances--i.e., the police lacked probable cause to arrest or reasonable suspicion to seize the suspect--or because the force used to effectuate it was excessive." Robinson v. Dist. of Columbia, 130 F. Supp. 3d 180, 192 (D.D.C. 2015). Here, Castro alleges that Tully and Salach had no justification to seize him and that the force they used was excessive.

With regard to justification for seizing Castro, the Magistrate Judge finds that Tully and Salach had reasonable suspicion to seize Castro based on his alleged noise violation and reckless driving. See R. & R. at 53 (Dkt. No. 83). Again, neither Castro, Tully, nor Salach object to the Magistrate Judge's recommendation. However, the Magistrate judge finds triable issues of fact as to whether Tully used excessive force.[5] See id. at 68. Tully objects to this finding. See Objs. R. & R. at 6-9 (Dkt. No. 84).

The court must assess the reasonableness of a particular use of force "'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight,' and must account 'for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation.'" Kenney v. Floyd, 700 F.3d 604, 609 (1st Cir. 2012) (quoting Graham, 490 U.S. at 396-97). "The test for excessive force is objective, 'without regard to [the officer's] underlying intent or motivation. An officer's evil

---

[5] Although Castro styles his excessive force claim as against both Tully and Salach, the operative facts pertain only to Tully's use of force in ramming Castro's vehicle and shooting him. Therefore, to the extent that Castro alleges excessive force against Salach, that claim is waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990); Jimenez v. Nielson, 334 F. Supp. 3d 370, 390 (D. Mass. 2018).

intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.'" Campos v. Van Ness, 52 F. Supp. 3d 240, 251 (D. Mass. 2014 (quoting Graham, 490 U.S. at 397)).

In particular, the court must "balance the individual's interest against the government's, weighing three non-exclusive factors: (1) 'the severity of the crime at issue,' (2) 'whether the suspect poses an immediate threat to the safety of the officers or others,' and (3) 'whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'" Raiche v. Pietroski, 623 F.3d 30, 36 (1st Cir. 2010) (quoting Graham, 490 U.S. at 396). In addition, courts may consider whether the officer violated any department policies. See Stamps, 813 F.3d at 32 n.4; Raiche, 623 F.3d at 37.

Generally, "[a] police officer's use of deadly force . . . is reasonable (and, therefore, constitutional) only when 'at a minimum, a suspect poses an immediate threat to police officers or civilians.'" McKenney v. Mangino, 873 F.3d 75, 81 (1st Cir. 2017) (quoting Jarrett v. Town of Yarmouth, 331 F.3d 140, 149 (1st Cir. 2003)). However, First Circuit case law is "'comparatively generous' to officers facing 'potential danger, emergency conditions or other exigent circumstances,' and . . . ha[s] fashioned 'a fairly wide zone of protection' for the police in

19

borderline cases." Id. at 81-82 (quoting Roy v. Inhabitants of City of Lewiston, 42 F.3d 691, 695 (1st Cir. 1994)). "When an officer shoots a fleeing suspect, his conduct is objectively reasonable when 'the officer [using the force] has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'" Campos, 52 F. Supp. 3d at 251 (quoting Tennessee v. Garner, 471 U.S. 1, 3 (1985)).

In this case, Tully suspected Castro of reckless driving, which is a misdemeanor. See Mass. Gen. Laws ch. 90, §24(2)(a); id. ch. 274, §1. Under LPD policies, Tully ordinarily should not have pursued or rammed Castro's vehicle. See Dkt. No. 69-7 at 26 of 74. However, Castro drove in reverse at a high rate of speed through two intersections without stopping in an attempt to flee Tully and Salach. He posed an immediate danger to the general public and to the officers as they pursued him as well. Therefore, even assuming that Tully intentionally rammed Castro's vehicle, the use of such force would have been a reasonable attempt to stop Castro.[6]

---

[6] The Magistrate Judge finds a triable issue of fact as to whether Tully used excessive force because Tully violated LPD policies on pursuits and ramming. However, the First Circuit has made clear that although department training and procedures may be considered, they "do not . . . establish the constitutional standard," and that violation of a department policy is neither necessary nor sufficient to establish a constitutional violation. See Stamps, 813 F.3d at 32 n.4.

Scott v. Harris, 550 U.S. 372 (2007), is instructive. In Scott, a police officer initiated a pursuit of a man traveling at 73 miles per hour down a road with a 55-miles-per-hour speed limit. See id. at 374. The officer "applied his push bumper to the rear of [the suspect's] vehicle," causing the suspect to lose control of his vehicle and crash. Id. at 375. The suspect sued, alleging that the officer employed unreasonable force. The Supreme Court disagreed and held that no reasonable jury would have found that the officer used excessive force. It explained that "[a] police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death." Id. at 386.

Like the suspect in Scott, Castro attempted to flee at a high rate of speed, threatening the lives of innocent bystanders. Although Castro was not traveling more than 70 miles per hour, he was traveling in reverse, increasing the risk to others on the road. Therefore, a reasonable jury would not conclude that Tully used excessive force when he rammed Castro's vehicle.

After Tully rammed Castro's vehicle, Castro continued reversing until he and Tully jumped a curb and stopped on a traffic island. Castro revved his engine and drove forward in an attempt to continue to flee again. As noted earlier, Tully asserts that Castro reversed towards him before driving away. Although the court

assumes that Castro was driving forward, in the circumstances of this case, an officer in Tully's position could have reasonably believed that Castro was driving in reverse toward him even if that belief was erroneous.

The Supreme Court has explained, however, that "the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" Heien v. North Carolina, 135 S. Ct. 530, 536 (2014) (quoting Brinegar v. United States, 338 U.S. 160, 176 (1949)). Therefore, "seizures based on mistakes of fact can be reasonable." Id. "The limit is that the mistakes must be those of reasonable men." Id. (internal quotation marks omitted); see also Torres v. City of Madera, 648 F.3d 1119, 1124 (9th Cir. 2011) ("Where an officer's particular use of force is based on a mistake of fact, we ask whether a reasonable officer would have or should have accurately perceived that fact."). Here, Tully had just pursued Castro reversing through two intersections in an attempt to flee that endangered innocent bystanders and continued in reverse even after Tully rammed him. Under these circumstances, a jury would be compelled to conclude that an officer in Tully's position could have reasonably believed that Castro was driving in reverse toward him even if that belief was erroneous.

Therefore, a reasonable officer could have concluded that there was probable cause to believe that Castro posed a significant

threat of death or serious injury to himself or others. See Plumhoff v. Ricard, 134 S. Ct. 2012, 2022 (2014); Garner, 471 U.S. at 3; Campos v. Van Ness, 52 F. Supp. 3d at 251. Therefore, Tully's use of force was reasonable.

Indeed, this case is analogous to McGrath v. Tavares, 757 F.3d 20 (1st Cir. 2014). In McGrath, two police officers were dispatched to a burglary. See 757 F.3d at 22. They pursued a "speeding" and "zigzagging" vehicle leaving the scene until the vehicle crashed. Id. at 23. The officers ordered the driver to turn off the car. See id. When the driver refused and accelerated towards the officers, one officer shot and killed the driver. See id. The driver's mother sued the officers, alleging that they used excessive force. In affirming summary judgment for the officer, the First Circuit found that the officer's use of force was reasonable because "[a] reasonable officer in this situation could reasonably believe he was facing a threat of serious physical harm, if not death." Id. at 28. The court explained that the officer's choices were "shoot or risk being run over" because "[a]fter all, a car can be used as a deadly weapon." Id.

Similarly, a reasonable officer in Tully's position could have believed that Castro was reversing, and would have faced the choice to shoot or risk being run over. Under such circumstances, no reasonable jury would conclude that shooting towards the vehicle was an excessive use of force.

Moreover, a reasonable officer could have believed that Castro posed a serious threat to innocent bystanders. Therefore, this case is analogous to Plumhoff, supra.

In Plumhoff, an officer pulled over a vehicle for an inoperable headlight. See id. at 768. While being questioned, the suspect drove away. See id. at 769. The officer pursued the suspect, who was driving erratically and at high speeds, until the suspect collided with an officer's cruiser and spun out. See id. After coming to a stop, he accelerated and continued fleeing down the street, when officers fired towards his car, causing him to lose control and crash. See id. at 770.

In finding that the officers acted reasonably in using deadly force, the Supreme Court concluded that "[u]nder the circumstances at the moment when the shots were fired, all that a reasonable police officer could have concluded was that [the suspect] was intent on resuming his flight and that, if he was allowed to do so, he would once again pose a deadly threat for others on the road." Id. at 777.

Like the suspect in Plumhoff, Castro attempted to flee from officers while driving erratically and at high speeds. After colliding with a police cruiser and coming to a stop, Castro attempted to flee again. Like the officers in Plumhoff, under the circumstances when Tully discharged his weapon, a reasonable officer could have concluded was that Castro was intent on resuming

his flight and that, if he was allowed to do so, he would once again pose a deadly threat for others on the road.

> ### 2. *No triable issue of fact exists as to whether Tully is entitled to qualified immunity.*

As indicated earlier, the Magistrate Judge finds that Tully was entitled to qualified immunity on any excessive use of force. Castro does not object to this recommendation.

In addition to the Magistrate Judge's analysis, the court notes that this case resembles Campos, supra. In Campos, an officer attempted to stop a suspect for speeding and running a stop sign. See id. at 246. The suspect fled and the and the officer pursued him. See id. In the ensuing pursuit, the suspect drove recklessly at a speed up to 90 miles per hour. See id. at 247. Eventually, the officer rammed the suspect' vehicle, causing it to spin and come to a stop. See id. The officer got out and the suspect began to drive away, but the parties disputed whether the suspect was driving toward the officer. See id. at 248. The officer shot and killed the suspect. See id.

The administratrix of the suspect's estate sued the officer for excessive force. The court held that the officer was entitled to qualified immunity. In particular, it found that "the level of risk that [the suspect's] conduct posed to third parties was high enough to place [the officer's] use of lethal force within the 'hazy border between excessive and acceptable force.'" Id. at 253

(quoting Saucier v. Katz, 533 U.S. 194, 206 (2001)). That is, the officer observed, among other things, the suspect driving erratically, speeding, ignoring commands, and attempting to flee down a public road. See id.

Here, Tully observed Castro driving erratically, speeding, ignoring commands, and attempting to flee down a public road. Therefore, like the officer in Campos, "a reasonable officer in [Tully's] position could have believed that [Castro] posed a substantial, imminent threat to other officers and civilians in the area."[7] Id. at 254.

D. Count Five: Fourteenth Amendment Equal Protection Clause

In addition to unreasonable seizure, Count Five alleges that Tully and Salach "subjected Castro to the deprivation of his rights . . . because he was Hispanic," in violation of the Equal Protection Clause of the Fourteenth Amendment. 2d Am. Compl. ¶194 (Dkt. No. 29). The Magistrate Judge recommends that the court deny summary judgment on this claim because "[n]either Tully nor Salach's memoranda in support of their motions for summary judgment address [it]." R. &. R. at 68 (Dkt. No. 83).

In their objections, Tully and Salach acknowledge that they did not address the federal equal protection claims in their

---

[7] Although not addressed by the parties, it does not appear the law has materially changed since 2008, when the events in Campos occurred. See 52 F. Supp. 3d at 242.

memoranda. See Objs. at 4 (Dkt. No. 84). However, they argue that
the court should nevertheless allow summary judgment because they
addressed race-based animus with respect to Count Nine. See id. at
4-5. As described earlier, Count Nine alleges that Tully and Salach
violated the Massachusetts Declaration of Rights. The Magistrate
Judge recommends that the court allow Tully's and Salach's motions
for summary judgment on Count Nine because there is no evidence
that they treated Castro differently because of his race. See
R. & R. at 80 (Dkt. No. 83)

As also explained earlier, generally "[p]arties must take
before the magistrate, not only their best shot but all of their
shots." Borden, 836 F.2d at 6 (internal quotations omitted).
Therefore, "[t]he reviewing court may consider evidence and
arguments not presented to the Magistrate Judge only in the most
compelling circumstances." Louis v. Bank of Am., N.A., No. 16-cv-
10859-MLW, 2017 U.S. Dist. LEXIS 47912, *5 (D. Mass. Mar. 30,
2017). Such a rule promotes both judicial efficiency and fairness.
See id.

This case, however, presents a compelling circumstance for
allowing summary judgment on Count Five because doing so would be
neither unfair nor inefficient. "The standard for equal protection
analysis under [the Massachusetts] Declaration of Rights is the
same as under the Federal Constitution." Brackett v. Civil Serv.
Comm'n, 850 N.E.2d 533, 545 (Mass. 2006); see Shurtleff v. City of

Boston, 385 F. Supp. 3d 109, 115 (D. Mass. 2019). Accordingly, as Tully and Salach point out, "any evidence that [Castro] would have shown to overcome summary judgment on his claim under the [Massachusetts] Declaration of Rights[] would have been the same that he would have had to show under the Equal Protection Clause." Tully & Salach Objs. at 5 (Dkt. No. 84). Under either, Castro "must present evidence that he was treated differently from similarly situated non-[Hispanic] motorists and that the action taken against him was motivated, at least in part, by his race." Flowers v. Fiore, 359 F.3d 24, 35 (1st Cir. 2004). However, Castro failed to do so.

Castro also had an opportunity to address race-based animus by filing a response to Tully and Salach's objections. See Fed. R. Civ. P. 72(b)(2) ("A party may respond to another party's objections within 14 days after being served with a copy."). However, he did not do so.

As this court agrees with the Magistrate Judge that the evidence is insufficient to permit a reasonable jury to find a violation of the Massachusetts Declaration of Rights, it is also insufficient to permit a jury to find a violation of Castro's federal right to equal protection. Therefore, summary judgment for Tully and Salach on Count Five is justified.

E. <u>Count Six: Conspiracy under 42 U.S.C. §1985(3)</u>

Count Six alleges conspiracy under 42 U.S.C. §1985(3) against Tully and Salach. To prevail on this claim, Castro must show: (1) "a conspiracy"; (2) "a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws"; (3) "an overt act in furtherance of the conspiracy"; and (4) either an "injury to person or property" or "a deprivation of a constitutionally protected right." <u>Soto-Padro v. Pub. Bldgs. Auth.</u>, 675 F.3d 1, 4 (1st Cir. 2012) (quoting <u>Perez-Sanchez v. Pub. Bldg. Auth.</u>, 531 F.3d 104, 107 (1st Cir. 2008)).

The Magistrate Judge finds that "Castro's personal injury of being shot or rammed by Tully's cruiser creates a genuine issue of material fact as to the injury element." R. & R. at 74 (Dkt. No. 83). Therefore, she recommends that the court deny summary judgment on Count Six. However, the fact that a jury could, and here would, find Castro was injured is not material if there is no evidence from which it could find that racial animus motivated the shooting.

In their objections, Tully and Salach argue that there is "no evidence to support any allegation that [their] actions were based on race" and, therefore, Castro fails to raise a genuine dispute as to an improper conspiratorial purpose. Objs. at 6 (Dkt. No. 84).

As the Magistrate Judge notes, neither Tully nor Salach explicitly argue lack of conspiratorial purpose with respect to

Count Six in their memoranda. However, they do argue lack of race-based animus with respect to Count Nine. See Tully Mem. Supp. Mot. Summ. J. at 12 (Dkt. No. 60); Salach Mem. Supp. Mot. Summ. J. at 8 (Dkt. No. 62). Therefore, the court has considered the objections, as to which Castro did not respond, de novo.

The court agrees with the Magistrate Judge that the evidence is insufficient to permit a reasonably jury to find any discriminatory animus on account of Castro's race. Therefore, no reasonably jury could find that Tully and Salach conspired to deprive Castro of equal protection of the laws. Accordingly, summary judgment is justified on Count Six.

F. Count One: Assault and Battery

Count One alleges assault and battery against Tully. "Massachusetts law allows for assault and battery claims against police officers who use excessive force in conducting an arrest." Raiche, 623 F.3d at 40. However, "reasonable force is a valid defense to assault and battery." Id. "Where a plaintiff alleges both a §1983 excessive force claim and common law claims for assault and battery . . . determination of the reasonableness of the force used under §1983 controls . . . determination of the reasonableness of the force used under the common law assault and battery claims." Id.

The Magistrate Judge recommends that the court deny summary judgment with respect to Count One because she finds triable issues of fact as to whether Tully used excessive force. Tully objects.

As discussed earlier, the court finds no triable issue of fact as to whether Tully used excessive force by ramming or shooting Castro. Therefore, Castro's assault and battery claim fails as well. Accordingly, the court is granting summary judgment on Count One.

G. Count Four: Negligent Infliction of Emotional Distress ("NIED")

Count Four alleges negligent infliction of emotional distress against the City. In particular, Castro seeks to hold the City liable because Tully allegedly "acted negligently in shooting Castro . . . ." 2d Am. Compl. ¶¶184-89 (Dkt. No. 29). This claim "is governed by the [MTCA], which effectively removes the defense of immunity in certain tort actions against public employers." Smith v. City of Boston, No. 03-10062-DPW, 2004 WL 1572626, *12 (D. Mass. July 13, 2004) (citing Spring v. Geriatric Auth. of Holyoke, 475 N.E.2d 727, 734-35 (1985)). The MTCA provides that "[p]ublic employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment . . . ." Mass. Gen. Laws ch. 258, §2.

The City did not move for summary judgment on Count Four. It appears, however, that the City is entitled to it. "It is apodictic that trial courts have the power to grant summary judgment sua sponte." Rogan v. Menino, 175 F.3d 75, 79 (1st Cir. 1999). Federal Rule of Civil Procedure 56(f)(3) provides that the court may "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." In the First Circuit, a district court may only grant summary judgment sua sponte if: (1) "discovery is sufficiently advanced that the parties have enjoyed a reasonable opportunity to glean the material facts"; and (2) the court "first gives the targeted party appropriate notice and a chance to present its evidence on the essential elements of the claim or defense." Berkovitz v. HBO, Inc., 89 F.3d 24, 29 (1st Cir. 1996).

The parties have completed discovery. "Notice, in this context, has two aspects: the summary judgment target is entitled to know both the grounds that the district court will consider and the point at which her obligation to bring forth evidence supporting the elements of her claim accrues." Rogan, 175 F.3d at 79. Here, the court does not discern any triable issues of fact as to whether Tully acted negligently. Rather, for the reasons explained earlier, the court finds that no reasonable jury would conclude that Tully acted unreasonably in pursuing, stopping, and shooting Castro.

32

Courts have often given a party 10 days to identify evidence placing a material fact in genuine dispute when they are considering entering summary judgment sua sponte. See, e.g., id. at 80; Fed. R. Civ. P. 56(c) (2008). It is appropriate to do so in this case.

VI.   ORDER

In view of the foregoing, it is hereby ORDERED that:

1.   The attached Magistrate Judge's Report and Recommendation (Docket No. 83) is ADOPTED in part and MODIFIED in part as described in this Memorandum and Order, pursuant to 28 U.S.C. §636(b)(1).

2.   Tully's Motion for Summary Judgment (Docket No. 59), Salach's Motion for Summary Judgment (Docket No. 61), the City's Motion for Partial Summary Judgment (Docket No. 63), and the City's Motion to Strike (Docket No. 73) are ALLOWED.

3.   Castro's Cross-Motion for Summary Judgment (Docket No. 68) is DENIED.

4.   Castro may, by September 20, 2019, file a memorandum and affidavit seeking to identify evidence raising a triable issue of fact as to Count Four. If he does not do so, summary judgment shall enter for the City. Any response shall be filed by September 30, 2019.

UNITED STATES DISTRICT JUDGE